## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JOHNNY DEE BRADDOCK,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 19-cv-861-SPM** |
| **SILGAN PLASTICS CORPORATION,** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

This matter is before the Court on defendant, Silgan Plastic Corporation's ("Silgan") motion for summary judgment. For the reason's set forth below, the Court grants Silgan's motion for summary judgment.

## PROCEDURAL BACKGROUND

This action stems from the termination of plaintiff Johnny Dee Braddock ("Braddock") from defendant Silgan where he was employed from April 2017 until his termination on February 5, 2019 (Doc. 1-1). Specifically, Braddock alleges that Silgan discharged him in retaliation for making statements to Silgan about the safety of the equipment and in support of an employee's claim for work-related injuries while operating the equipment (*Id*). Silgan denies that Braddock's termination was related to his complaint or to his support of his co-worker and now moves for summary judgment (Docs. 3, 23).

## FACTUAL BACKGROUND

Silgan is a Missouri-based manufacturer of plastic pharmaceutical and automotive bottles, with a plant located in Flora, Illinois (Doc. 23 at 1). The bottles were produced in a three-stage plastic injection machine where plastic pellets were fed into the machine to form plastic bottles (*Id.* at 2). Silgan has a No Tolerance Policy which prohibited employees from crossing under the safety gate and which required machines to be disengaged before entering (*Id.)*. Underneath the machine and outside the safety gate is the tivar bar, which can be cleaned while the machine is engaged (*Id.)*. A stripper bar was located inside the gate and it pulled the plastic bottles off the machine (*Id.)*..

Braddock was hired by Silgan in April 2017 and began working in the Flora plant as a production supervisor on the second shift where he supervised 15 to 18 employees (*Id.* at 3). In the summer of 2017, Braddock requested of Jay Soger, his former plant manager, the installation of "link lights" on the machines (*Id.*). Link lights establish a perimeter around the safety gate so that the machine shuts down when anything crosses it (*Id.*). Silgan did not install link lights (*Id.)*.

On October 30, 2017, Silgan employee Tyral Allen, committed a no tolerance safety violation and sustained a burn injury when he reached under a safety gate to retrieve a piece of plastic (*Id.*). At the time of the incident, Braddock was Allen's supervisor, and he claimed the injury could have been prevented with the installation of link lights (*Id.* at 4). Following this violation, neither Allen nor Braddock were disciplined because Silgan determined Allen had not received sufficient safety

training (*Id.*). As such, Braddock conducted safety training for all the second shift employees he supervised (*Id.*).

On January 25, 2019, Allen suffered his second workplace injury when he had the tip of his finger pinched off (*Id.*). Braddock testified in his deposition that he believed that Allen had gotten his "fingers in the cylinder to the stripper bar which is – which is still barely under the safety gate." (Doc. 25, p. 3). After the incident, Braddock took Allen to the hospital (*Id.* at 5). When Braddock returned to Silgan, he met with Curtis Ray, Silgan's manufacturing manager, and Kelly Conard, Silgan's human resources coordinator, before returning to the hospital (*Id.*).

While Braddock was at the hospital for the second time, Ray and Conard reviewed video footage to of the incident and observed Allen commit a no tolerance safety violation by reaching into and past the safety gate to clean the stripper bar while that machine was engaged (*Id.*). During the video review, Ray and Conard also observed another employee under Braddock's supervision, Audrey McCarthy, commit a no tolerance safety violation by reaching into the safety gate while the machine was engaged (*Id.* at 6).

At the hospital, Allen completed the "Explanation of Incident" box in the first aid report, and stated, "I was told there was oil on the bottles, so I wiped off the oil on the plastic chute that's attached to the stripper bar & noticed there was still oil on the underside of the stripper bar cylinders. Went to wipe that off & my finger was pinched off the tip. Left index finger." (Doc. 23-12). As his supervisor, Braddock signed off on the form (*Id.*). Braddock then completed the Supervisors Accident Investigation form where he stated in part that "He (Tyrel) then wiped under the

plastic catching left index finger tip pinching finger tip off" (Doc. 23-13). When asked about possible causes, Braddock mentioned the "bottom of stripper bar" (*Id.*). Upon his return to Silgan at approximately 3:30 a.m., Braddock submitted both the First Aid Report and Supervisors Accident Investigation forms (*Id.*). Prior to leaving Silgan, Braddock watched the video footage, which confirmed that Allen had committed a no tolerance safety violation by reaching under the safety gate while the machine was engaged in an attempt to wipe oil off the stripper bar (Doc. 23 at 6).

On the morning of January 26, 2019, Braddock, Allen and McCarthy were all suspended pending the results of the accident investigation (*Id.* at 7). It was Silgan's policy to report any incidents to the no tolerance review panel, which consisted of the safety director, vice-president, director of HR, director of the facility, senior HR business partner, plant manager, plant production manager and plant HR (*Id.*). Conard and Ray began the investigation by reviewing the first aid report and supervisors report, as well as viewing the video footage (*Id.*). They also looked at the training records and zero tolerance policy acknowledgements for Braddock, Allen and McCarthy (*Id.*). Braddock did speak with Soger, plant manager, but he never revised his statement about how the accident occurred (*Id.*).

On February 5, 2019, the no tolerance review panel unanimously decided to terminate Allen and McCarthy for committing an unsafe (No Tolerance) act, and also decided to terminate Braddock for failing to enforce the safety procedures under the Zero Tolerance Policy (*Id.* at 8). Conard created a memorandum of Silgan's investigation and conclusion (*Id.*)

.

## LEGAL STANDARD

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055 (7th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); s*ee Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Stated another way, the nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003) *(*citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). However, no issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *See Faas v. Sears, Roebuck & Co.*, 532 F.3d 633 (7th Cir. 2008). The nonmovant cannot simply rely on its pleadings; the nonmovant must present admissible evidence that sufficiently shows the existence of each element of its case on which it will bear the burden of proof at trial. *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311 (7th Cir. 1995) (*citing Serfecz v. Jewel Food Stores*, 67 F.3d 591 (7th Cir.

1995); *Greater Rockford Energy and Technology Corp. v. Shell Oil Co.,* 998 F.2d 391

(7th Cir. 1993)).

## ANALYSIS

### A.  *Applicable Law*

In Illinois, employees who serve absent a contract are considered "at-will" and

generally may be discharged for any or no reason. *Kelsay v. Motorola, Inc.*, 384 N.E.2d

353 (Ill. 1978). Retaliatory discharge is an exception to this rule. *Turner v. Memorial*

*Medical Center,* 945 N.E.2d 618 (Ill. 2011). Illinois common law recognizes a cause of

action for retaliatory discharge, which is limited and narrow. *Palmateer v.*

*International Harvester Co.,* 421 N.E.2d 876 (Ill. 1981). The limited scope of

retaliatory discharge is an attempt to achieve a "proper balance" between the

employer's interest in maintaining an efficient and profitable business while

recognizing the competing interests of the employee in earning a livelihood and

society's interest in effectuating vital public policies. *Turner,* 911 N.E.2d at 375.

Although an employer generally retains the right to fire its employees "at-will," an

employer may not discharge an employee if a clear mandate of public policy is

involved. *Palmateer.* 421 N.E.2d 876.

To sustain a cause of action for retaliatory discharge, an employee must prove:

(1) the employer discharged the employee, (2) the discharge was in retaliation for the

employee's activities (causation), and (3) the discharge violates a clear mandate of

public policy. *Turner*, 911 N.E.2d 369. The requirement that the discharge be in

retaliation for plaintiff's activities requires that a plaintiff establish a causal

relationship between the employee's activities and the discharge. *Dixon Distributing*

*Co. v. Hanover Insurance Co.,* 641 N.E.2d 395 (Ill. 1994). When deciding the element of causation, the ultimate issue is the employer's motive in discharging the employee. *Clemons v. Mechanical Devices Co.,* 704 N.E.2d 403 (Ill. 1998).

With respect to surviving a motion for summary judgment on an Illinois retaliatory discharge claim, a plaintiff must have offered sufficient evidence for a trier of fact to find that: (1) the employer discharged the employee; (2) in retaliation for the employee's protected activities; and, (3) that the discharge was in contravention of a clearly mandated public policy. *Reid v. Neighborhood Assistance Corporation of America,* 749 F.3d. 581 (7th Cir. 2014); *citing Palmateer v. Int'l Harvester Co.,* 421 N.E.2d 876 (Ill. 1981). Under federal law, retaliation claims usually follow the *McDonnell Douglas* framework that shifts the burden after plaintiff presents a *prima facie* case to the defendant to provide a legitimate reason for the termination. *Gacek v. Am. Airlines, Inc.,* 614 F.3d 298 (7th Cir. 2010); *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). However, *McDonnell Douglas* is not followed in this state as Illinois courts were not willing to "expand the tort of retaliatory discharge by reducing plaintiff's burden of proving the elements of the tort". *Clemons,* 704 N.E.2d 403. Instead, Illinois law requires the plaintiff to offer affirmative evidence of causation to survive summary judgment. Gacek, 614 F.3d at 303.

B.    *Discussion*

In order to determine whether Braddock can survive this motion for summary judgment. this Court must go through the *Reid* factors to determine whether Braddock offered sufficient evidence to support his claim. *Reid,* 749 F.3d at 587.

## 1. Discharge

There is no dispute that Braddock was terminated on February 5, 2019, so this factor has been satisfied.

## 2. Causation

Braddock claims he was terminated because he indicated his support for Allen after his work injury and appeared to place blame for the injury on Silgan. In other words, Braddock indicated that the injury would not have happened if Silgan had followed his advice and installed link lights.

A plaintiff claiming retaliatory discharge must prove that his discharge was "in retaliation for his activities." *Michael v. Precision Alliance Group, LLC.,* 21 N.E.3d 1183 (Ill. App. 5th Dist. 2014). When deciding element of causation in a retaliatory discharge case, the ultimate issue to be decided is the employer's motive in discharging the employee. *Id.*, 21 N.E.2d at 1188. The element of causation is not met if the employer has a valid, non-pretextual basis for discharging the employee. *Grabs v. Safeway, Inc.,* 917 N.E.2d 122 (Ill. App. 1st Dist. 2009). Illinois law clearly provides that if the trier of fact finds the employer's proffered reasons for the employee's discharge to be valid and non-pretextual, the employee has failed to show causation, one of the necessary elements of a retaliatory discharge claim. *Micheal,* 21 N.E.3d at 1189. Moreover, if an employer comes forward with a valid, non-pretextual reason for an employee's discharge, there can be no causation in a retaliatory discharge claim. *Id.*

A plaintiff may not survive summary judgment "merely by proving that the reasons given by [Defendant] for firing him were unworthy of belief," as he would

under the *McDonnell Douglas* framework. *Id.* Instead, to establish a causal relationship, a plaintiff "must affirmatively show that the discharge was primarily in retaliation for his exercise of a protected right." *Roger v. Yellow Freight Sys., Inc.,* 21 F.3d 146, 149 (7th Cir.1994) (citing *Marin v. Am. Meat Packing Co.,* 562 N.E.2d 282 (Ill. App. Ct. 1st Dist.1990)). To do so, a plaintiff must "proffer sufficient evidence from which a reasonable jury could infer that the employer was improperly motivated." *Gordon v. FedEx Freight,* 674 F.3d 769 (7th Cir. 2012) (quoting *Roger,* 21 F.3d at 149).

Here, Braddock argues that the facts suggest that Silgan's motive in terminating him was pretextual; however, a pretextual argument alone is not enough to establish the element of causation (Doc. 25). Braddock attempts to raise issues that would give rise to a factual dispute; however, his recommendation for link lights is not contested nor is it a material fact. Furthermore, the documents[1] bely Braddock's contention that he was speaking about the tivar bar, not the stripper bar (Doc. 25). The **undisputed evidence** is that Silgan had a "No Tolerance" policy and that two of Braddock's subordinates, Allen and McCarthy, both committed violations of said policy while being supervised by Braddock (Doc. 23). Indeed, summary judgment is appropriate where plaintiff does not provide any credible evidence that the reasons provided by defendant were unworthy of belief. *See Gacek*, 614 F.3d at 303.

3. **Public Policy**

Although summary judgment is appropriate as no reasonable trier of fact could

---

[1] Defendant signed off on the First Aid Report on January 25, 2019 that was prepared by Tyral Allen as well as prepared his own Supervisor Accident Investigation Form also on January 25, 2019.

support causation whereby Braddock was terminated for recommending link lights or for showing support for Allen's potential workers' compensation claim, this Court will still go through the third factor.

Illinois courts have never assigned a precise definition to what is meant by public policy. "[I]n general, it can be said that public policy concerns what is right and just and what affects the citizens of the state collectively. *Palmateer,* 421 N.E.2d at 878-879. It is found in the State's constitution and statutes and, when they are silent, in its judicial decisions. *Id.*

A review of Illinois case law reveals that retaliatory discharge actions have been allowed in limited settings: where an employee is discharged for filing, or in anticipation of filing, a claim under the Workers' Compensation Act; where an employee is discharged in retaliation for the reporting of illegal or improper conduct, otherwise known as "whistleblowing"; or violations of health and safety standards. *Kelsay, 384 N.E.2d 353; Jacobson v. Knepper & Mogo, P.C.,* 706 N.E.2d 491 (Ill. 1998); *Wheeler v. Caterpillar Tractor, Co.,* 485 N.E.2d 372 (Ill. 1985). The Illinois Supreme Court "has consistently sought to restrict the common law tort of retaliatory discharge." *Turner,* 945 N.E.2d 6187; *Fisher v. Lexington Health Care, Inc.,* 722 N.E.2d 1115 (Ill. 1999). The rationale for these limited scenarios is that, in these situations, an employer could effectively frustrate a significant public policy by using its power of dismissal in a coercive manner; therefore, recognition of a cause of action for retaliatory discharge is considered necessary to vindicate the public policy underlying the employee's activity, and to deter employer conduct inconsistent with that policy. *Id.*

None of those scenarios are present here. Braddock alleges that his termination was because he recommended link lights and because he displayed support for Allen (Doc. 1-1). Braddock was not discharged because he had filed or was planning on filing a workers' compensation claim, nor was he fired for reporting any illegal conduct or safety violation (*Id.)*. Again, neither of his assertion are grounds for upholding a claim of retaliatory discharge. While safety is clearly important, plaintiff did not provide any evidence that link lights were a specified safety violation by way of OSHA or other industry standards nor did he provide any evidence that he "blew the whistle" and informed authorities of any violation (Doc. 25-1). It is undisputed that Braddock asked Jay Soger to install link lights, but asking the manager to install link lights and reporting the lack of link lights to the authorities, if it is a safety violation, are two very different things. This Court is not inclined to find that Braddock's termination was in violation of any clearly defined public policy. Braddock was an at-will employee, and because his discharge did not violate the clear mandate of public policy, he could be terminated at any time for any reason or for no reason at all. See *Barr v. Kelso-Burnett Co.,* 478 N.E.2d 1354 (Ill. 1985).

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Motion for Summary Judgment filed by Defendant, Silgan Plastics Corporation. This action is **DISMISSED with prejudice**, and the Clerk of Court is **DIRECTED** to close the case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:** <u>**February 24, 2021**</u>

<u>**/s/ Stephen P. McGlynn**</u>
**STEPHEN P. McGLYNN**
**U.S. District Judge**